UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY VALDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.   1:24-cv-00026-JLT-EPG<br><br>FINDINGS & RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED.<br><br>(ECF Nos. 13, 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

　　　　This matter is before the Court on Plaintiff Sandy Rae Valdez's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. *See* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(15) (referring final social security decisions for findings and recommendations).

　　　　Plaintiff argues as follows:

　　　　A. The ALJ failed to incorporate all of Plaintiff's limitations in the hypothetical questions posed to the vocational expert.

　　　　B. The ALJ failed to properly analyze Plaintiff's subjective symptom testimony.

　　　　C. The ALJ improperly used activities of daily living to attack Plaintiff's credibility in

1

the subjective symptom analysis.

D. The ALJ did not properly consider Plaintiff's obesity claim.

E. The ALJ erred in finding that Plaintiff's right hip pain, upper extremity numbness, depression and anxiety were non-severe impairments at step two.

Having reviewed the record, administrative transcript,[1] parties' briefs, and the applicable law, the Court finds as follows.

I.   **ANALYSIS**

   **A. Step Four**

Plaintiff contends that the ALJ erred at step four by propounding hypotheticals to the vocational expert that omitted certain environmental limitations assessed in Plaintiff's residual functional capacity ("RFC"). (ECF No. 13-1 at 3–4; ECF No. 18 at 2–4). As a result, Plaintiff argues the vocational expert's testimony lacked evidentiary value and it was improper for the ALJ to rely on the testimony to find that Plaintiff could perform her past relevant work. (ECF No. 13-1 at 4). In response, the Commissioner argues that the ALJ did not commit legal error, and that the ALJ's step four findings are supported by substantial evidence. (ECF No. 17 at 4–6).

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Past relevant work is work that was "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy." Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). The Dictionary of Occupational Titles ("DOT") is the "best source for how a job is generally performed." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting Pinto, 249 F.3d at 845). The ALJ may also rely on a vocational expert's testimony at step four. See Pinto, 249 F.3d at 845; 20 C.F.R. § 404.1560(b)(2) (providing that the agency "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles'" to determine whether the claimant can perform

---

[1] ECF No. 12-1 through 12-11 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

past relevant work).

Despite the claimant's burden at step four, "the ALJ still has a duty to make the requisite factual findings to support [her] conclusion." Pinto, 249 F.3d at 844. The ALJ's decision regarding a claimant's past relevant work must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" when considering "the record as a whole." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993) (per curiam).

In this case, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(b) with the following limitations:

> The claimant is limited to occasional climbing ramps or stairs but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, crouch, crawl, or kneel. Additionally, the claimant must avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights.

(AR 23). At issue here are the environmental limitations restricting Plaintiff's exposure "to extreme cold, vibration, and hazards such as moving machinery and unprotected heights." (Id.)

During the hearing, Plaintiff and an impartial vocational expert testified regarding Plaintiff's past work. Plaintiff testified that she began working at Del Monte Foods in February 2003, and was a senior accounting analyst there when she went on long-term disability leave in May 2021. (AR 39, 46). Plaintiff indicated in her work background form that her job duties consisted of "analyz[ing] inventory transactions," which she testified required "all [] day sitting and lifting files." (AR 46, 289). Relying on the Dictionary of Occupational Titles ("DOT"), the vocational expert classified Plaintiff's past work as an "accounting clerk, DOT code 216.482-010, sedentary, with an SVP of 5." (AR 51). The ALJ posed three hypothetical questions to the vocational expert and Plaintiff's attorney posed one follow-up hypothetical. (AR 51–52). The parties do not dispute that the hypotheticals to the vocational expert did not include any of the environmental limitations included in Plaintiff's RFC.

In her written decision, the ALJ determined at step four that Plaintiff "is capable of performing past relevant work as an accounting clerk as actually and generally performed." (AR 26). In relevant part, the ALJ explained:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find the claimant can return to their work as accounting clerk. In making this decision, I considered both the claimant's

3

>  description and testimony of their past work. Additionally, the vocational expert testified above residual functional capacity does not preclude the claimant from performing their past work as accounting clerk as they performed it and as it is generally performed in the national economy.

(AR 26–27) (internal citations omitted). Plaintiff argues that the ALJ committed clear legal error by relying on the vocational expert's testimony at step four because the hypotheticals did not include the environmental limitations.

Contrary to Plaintiff's contention, the ALJ did not overlook the environmental limitations in her step four analysis. Rather, the ALJ expressly acknowledged in her decision that the RFC contained "environmental limitations that were not presented to the vocational expert at the hearing," but the ALJ stated that "according to the DOT, the position of accounting clerk does not have exposure to the environmental conditions such as extreme cold, vibration, and hazards." (AR 27). Plaintiff does not point to any other evidence, either in the record or her testimony, showing that she was exposed to such environmental conditions in her past work. Therefore, Plaintiff did not meet her step four burden and the ALJ did not err in relying on the vocational expert's testimony in conjunction with the DOT listing to find that Plaintiff's past relevant work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (AR 26).

Further, the Court's review of the DOT listing for accounting clerk confirms that this listing does not include the environmental limitations assessed in Plaintiff's RFC. See DICOT 216.482-010 Accounting Clerk, 1991 WL 671933 (Jan. 1, 2016) (environmental conditions and hazards are either "not present" or "do[] not exist"). "From this it follows that the vocational expert's answer to the hypothetical question[s] would not have been different" even if the environmental limitations "had been included as a part of the question[s]." McGarrah v. Colvin, 650 F. App'x 480, 481 (9th Cir. 2016); see also Gaston v. Comm'r of Soc. Sec. Admin., 577 F. App'x 739, 742 (9th Cir. 2014) (ALJ's failure to include a reaching limitation in a hypothetical question was harmless error where the DOT listing for the job the vocational expert identified did not require such an ability). Thus, even if the ALJ erred by omitting the RFC's environment limitations in the hypotheticals posed to the vocational expert, any error was harmless. See Carmickle, 533 F.3d at 1162 (explaining that an error is harmless when it is "inconsequential to

the ultimate nondisability determination") (citations omitted).

### B. Plaintiff's Subjective Symptoms

Plaintiff's next two arguments concern the ALJ's discounting of her subjective complaints. (ECF No. 13-1 at 4–11). First, Plaintiff argues the ALJ failed to sufficiently identify her subjective symptom testimony and made a generalized "boilerplate statement that the record undermines [her] testimony." (Id. at 8–9). Plaintiff asserts that the "ALJ did not link specific medical evidence to the relevant symptom testimony and explain why the former rendered the latter not credible." (Id. at 8). Second, Plaintiff argues that the ALJ "attempts to use activities of daily living to controvert Plaintiff's subjective symptom testimony, but never even attempts to meet the Ninth Circuit requirements to do so." (Id. at 11).

The Commissioner counters that "substantial evidence supports the ALJ's assessment of Plaintiff's subjective testimony" and that the ALJ adequately explained how Plaintiff's activities of daily living "were inconsistent with the severity of the symptoms she alleged." (ECF No. 17 at 6, 12).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995); see Carmickle, 533 F.3d at 1161 ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-

convincing standard.").

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 25). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ provided the following recitation of Plaintiff's subjective complaints and her daily activities:

> The claimant alleges being unable to work because of lumbar degeneration status post fusion (May 2021), left knee pain status post partial joint replacement (October 2021), and hip pain. The claimant testified to significant pain resulting in difficulty sitting and walking. She reports balance issues requiring the use of a cane, specifically when going up or down a hill. Additionally, I acknowledge the claimant is obese. Ultimately, the representative argues the claimant is limited to less than sedentary exertional capacity and in simple and routine tasks.
>
> The claimant lives in a house with her daughter. The claimant testified getting help from her daughter when it comes to "the lifting part" of activities. She reports having difficulties with grocery shopping, vacuuming, and laundry. Her hobbies include watching her grandchildren play sports. The claimant can manage her own finances without assistance. Additionally, I acknowledge the claimant completed a Function Report a few months following her lumbar surgery. During that recovery time, the claimant indicated significant difficulties in dressing, showering/bathing, using the toilet, and going outside alone. The claimant testified the only benefit of her back surgery is being able to stand straighter, but this is generally inconsistent with the evidence showing significant improvement, especially in pain.

(AR 23–24).

Following this recitation, the ALJ discussed Plaintiff's medical treatment, generally noting that Plaintiff's physical impairments had improved with surgical intervention, medication and physical therapy:

> In May 2021, the claimant had a history of a lumbar degeneration along with a fusion at L4. She developed next segment disease, degenerative arthritis, and severe pain. 19F/4-9, 139. Christopher Ames, MD, the claimant's orthopedic surgeon reported she had failed nonoperative treatment and ultimately performed a lumbar fusion at L3-L4 and L4-L5 without intraoperative complications. 8F/7-12, 33-35.
>
> Three months following surgery, Crystal Bravate, PA, reported the claimant was doing well and her pain had improved greatly despite some numbness in her feet. Examination revealed 5/5 motor strength. She was ambulating with an antalgic

>gait, but this was due to her left knee pain, which was in the process of being worked up. Diagnostic imaging revealed the claimant's hardware as intact with improved alignment compared to preoperative images. She was recovering as expected. The claimant was treating with pain management and was referred to start physical therapy. 20F/107-108.
>
>Ian Duncan, MD, reported the claimant presented with left knee pain without traumatic injury. The claimant was using a knee brace to help with stability. 11F/10. Diagnostic imaging revealed severe degenerative joint disease and the claimant underwent a left knee arthroplasty. 11F/15-16. Subsequently, the claimant reported being very pleased with the result and was without complaints. She was overall better than before the surgery. The claimant was making significant improvement in physical therapy but was still using a walker to help her ambulate. 12F/2.
>
>Physical therapy notes indicate the claimant was doing great and continuing exercises upon discharge. She was able to independently complete all activities and self-care without assistance. Gait and balance returned to normal. She was cleared to drive. 13F/12, 16, 17.
>
>Jennifer Nelsen, NP, a pain specialist, reported the claimant's back pain reached a baseline and despite some knee pain she was healing well. Examination revealed the claimant as obese (BMI 33) and in no acute distress. Her back was mildly tender with a reduced range of motion. Her knee retained normal motion without pain. Neurologically, the claimant had 5/5 motor strength, intact sensation, but an antalgic gait. However, she was able to stand without difficulty and mobilize without assistance. NP Nelsen assessed lumbar radicular pain status post-surgery and postoperative left knee pain. She was on opioid therapy without mention of side effects. She reported improved functional ability, including in attending to daily activities. 16F/2-6.
>
>In May 2022, John Burke, MD, a neurologist, reported the claimant was continuing to have occasional low back pain but was otherwise stable one year following lumbar surgery. She specifically denied weakness, numbness, or other neurological deficits. Examination revealed the claimant has 5/5 motor strength, ambulating in a normal fashion. Diagnostic imaging continued to show stability in comparison to prior postsurgical imaging. The doctor recommended the claimant continue to pursue therapy. 19F/1595-1596.

(AR 24).

After discussing Plaintiff's medical treatment, the ALJ concluded that Plaintiff's testimony regarding the severity of her impairments and her daily living activities was "not entirely consistent with the medical and other evidence." (AR 24). The ALJ explained that:

>The claimant testified she would be unable to work because of chronic pain in her back and knee. However, the medical evidence indicates the claimant's pain improved greatly following back surgery and she was mostly concerned about her

7

      left knee. 8F/144. NP Nelsen indicated she was on opioid therapy without mention of side effects. She reported improved functioning, including in her ability to attend to daily activities.16F/2-6. Additionally, I acknowledge the claimant was very pleased with the result of her left knee arthroplasty. She was using a walker to help her ambulate during recovery but was eventually seen without any assistive [device]. 12F/2. Her gait was normal to antalgic thereafter. 13F/14, 16, 16F/5. Additionally, the claimant testified needing assistance with her activities of daily living, but physical therapy notes indicate she was independent in completing all activities, including self-care without assistance. 13F/12. Overall, I find the claimant's statements generally inconsistent with the evidence of record.

      After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 24–25).

Upon review of the record, the Court concludes that the ALJ provided "findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."). The ALJ reasonably determined that the medical evidence, which generally showed self-reported and objective improvement, was inconsistent with Plaintiff's allegations of disabling physical limitations. See Leonard v. Colvin, 633 F. App'x 362, 363 (9th Cir. 2015) ("The ALJ offered specific, clear, and convincing reasons for rejecting Leonard's testimony regarding the severity of his symptoms, including evidence that Leonard's symptoms improved after his surgeries and the lack of evidence of post-surgery treatment."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility). Further, the ALJ made a reasonable determination that Plaintiff's daily activities, as reported in her physical therapy and other post-surgical treatment records, were inconsistent with her hearing testimony. Smartt, 53 F.4th at 499 ("An ALJ may also consider whether the claimant engages in daily activities inconsistent with the alleged symptoms. Even if the claimant experiences some difficulty or pain,

her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

**C. Consideration of Obesity**

Plaintiff next argues that the ALJ did not properly analyze how her obesity affected her RFC. (ECF No. 13-1 at 12–13).

An ALJ is required to consider an individual's obesity at steps two through five of the sequential disability evaluation. SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Moreover, obesity must be considered in combination with the individual's other impairments. Id. SSR 02-1p directs that "[the ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id. Rather, "[the ALJ] will evaluate each case based on the information in the case record." Id. When the record does not contain evidence of functional limitation due to obesity, or indicate that obesity exacerbated other impairments, the ALJ is not required to consider obesity in combination with other impairments. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005); see also Garcia v. Comm'r of SSA, 498 F. App'x 710, 712 (9th Cir. 2012) (the ALJ's finding that obesity did not impact the RFC was proper where the Plaintiff "did not provide any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis") (internal quotation marks omitted); Hoffman v. Astrue, 266 F. App'x 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was proper because Hoffman failed to show how his obesity in combination with another impairment increased the severity of his limitations.").

In this case, the ALJ found Plaintiff's obesity was a severe impairment at step two. (AR 20). At step three, the ALJ determined that Plaintiff's obesity, either alone or in combination with Plaintiff's other impairments, did not meet or medically equal a listing. (AR 22). Next, in the RFC discussion, the ALJ explicitly stated that she considered Plaintiff's obesity in formulating Plaintiff's RFC. (AR 22). In particular, the ALJ found persuasive the findings of a physical medical consultant who took into account Plaintiff's obesity. (AR 25). The ALJ ultimately formulated an RFC that limited Plaintiff to a "reduced range of sedentary exertion" due to the

"combination of [Plaintiff's] obesity and musculoskeletal impairments." (Id.) The ALJ explained:

> [The] residual functional capacity assessment is supported by evidence such as the findings of the medical consultants, diagnostic testing, physical examinations, surgical intervention, type of treatment, response to treatment, third-party statements, the claimant's admitted activities and the record. The claimant is obese with back and knee pain status post surgeries. Examinations reveal the claimant in no acute distress. She had a reduced range of motion in her back and tenderness in her left knee. Although the claimant has an antalgic gait, the claimant can stand and walk without assistance. There were no persistent issues with sitting. In fact, the claimant reported significant improvement in her back pain following surgery and was very pleased with the outcome of the left knee arthroscopy. Additionally, physical therapy notes indicate the claimant was able to perform activities without assistance, including independently performing self-care and driving. All these supports limiting the claimant to sedentary exertion with mostly occasional postural movements and limitations in climbing and environment.

(AR 26).

Based on the above, it is clear that the ALJ accounted for Plaintiff's obesity in her RFC assessment. Plaintiff does not point to "any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." Burch, 400 F.3d at 683; see also Tsosie v. Berryhill, 717 F. App'x 680, 682 (9th Cir. 2017) ("[Plaintiff] has not shown that the ALJ ignored any relevant evidence of obesity that could have affected his residual functional capacity determination. We therefore find that the ALJ gave legally sufficient consideration to [Plaintiff's] obesity.") (internal citation omitted). Because the ALJ considered Plaintiff's obesity in conjunction with her other impairments and Plaintiff points to no functional limitations that the ALJ did not consider, the Court finds no error in the ALJ's treatment of Plaintiff's obesity.

**D. Step Two**

Plaintiff argues that the ALJ erroneously determined that her right hip pain, upper extremity numbness, depression and anxiety were non-severe impairments at step two. (ECF No. 13-1 at 13–14). In response, the Commissioner argues that the substantial evidence supports the ALJ's step two findings. (ECF No. 17 at 13–14).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); see Yuckert

v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985).

Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005). A step two finding must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 686.

Regarding Plaintiff's right hip pain, the ALJ observed at step two that since Plaintiff's hip surgeries, which occurred a decade before Plaintiff's alleged onset date, there was "minimal treatment in the current record" for hip-related issues. (AR 20–21). The ALJ noted that diagnostic evidence confirmed Plaintiff's total hip prosthesis remained in place and that Plaintiff reported in May 2021 that her symptoms were "not believed to be related to her prior hip issues." (Id. at 21). The ALJ found there was "no evidence the claimant's right hip pain causes more than a minimal limitation in her ability to perform basic work functions," and as such, the ALJ concluded it was a non-severe impairment. (Id.)

The ALJ concluded Plaintiff's upper extremity numbness was not a severe impairment for similar reasons. (AR 21). The ALJ considered Plaintiff's testimony that she had "numbness in her arms but admitted it did not interfere with her ability to use her arms during the day." (Id.) The ALJ observed that Plaintiff's testimony was consistent with medical evidence showing that "she had no loss of sensation in her upper extremities and retained full motor strength." (Id.) Although the ALJ found the numbness to be nonsevere, the ALJ stated that limiting Plaintiff to sedentary exertion would "fully account for her allegations." (Id.)

As to Plaintiff's mental impairments, the ALJ found that Plaintiff had medically determinable impairments of depression and anxiety, but concluded that they were non-severe because they caused "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." (AR 21–22). In reaching this determination, the ALJ pointed to Plaintiff's testimony that she had not been diagnosed with any mental conditions. (AR 21, 46). The ALJ also addressed in detail the four functional areas set out in the "Paragraph B" criteria for evaluating mental impairments. (AR 21–22). The ALJ's analysis of the four functional areas

11

specifically contrasted Plaintiff's subjective statements about her mental limitations with the relevant objective medical evidence. Finally, the ALJ stated that her RFC formulation, which included no mental limitations, "reflect[ed] the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis." (AR 22).

Substantial evidence supports the ALJ's step two findings regarding Plaintiff's right hip pain, upper extremity numbness, and mental impairments. Plaintiff does not identify any evidence that the ALJ failed to consider or otherwise explain why the record does not support the ALJ's step two findings. As such, the Court concludes that Plaintiff has not shown error.

## II. CONCLUSION AND RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS RECOMMENDED that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED.
2. The Commissioner of Social Security's request to affirm the agency's decision (ECF No. 17) be GRANTED.
3. The Clerk of Court be directed to enter judgment in favor of the Commissioner of Social Security and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 17, 2025**     /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE